**WISCONSIN WINNEBAGO NATION, a federally recognized Indian Tribe, Plaintiff,**

v.

**Tommy THOMPSON, Governor of the State of Wisconsin, Defendant.**

No. 93–C–0040–C.

United States District Court, W.D. Wisconsin.

June 7, 1993.

Donald J. Simon, Sonosky, Chambers, Sachse & Endreson, Washington, DC, for Wisconsin Winnebago Nation.

Warren D. Weinstein, Asst. Atty. Gen., Madison, WI, for Tommy Thompson.

## OPINION AND ORDER

CRABB, Chief Judge.

This is a civil action for declaratory and injunctive relief brought pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. § 2701, et seq., in which plaintiff requests that defendant be directed to conclude a tribal-state gaming compact with plaintiff governing Class III gaming on plaintiff's De Jope site in Dane County, Wisconsin. Although plaintiff has already concluded a gaming compact with defendant regarding its Indian lands in Sauk, Jackson and Wood counties, it wishes to negotiate an additional compact for the De Jope site. Plaintiff contends that defendant may not refuse to negotiate over the De Jope site because plaintiff has the unilateral right to determine where on its Indian lands it wishes to conduct Class III gaming. In the alternative, plaintiff asserts that in refusing to negotiate with plaintiff over the De Jope site, defendant has failed to negotiate in good faith as required by the Indian Gaming Regulatory Act. The case is before the court on motions for summary judgment by both parties. Jurisdiction is present. 28 U.S.C. § 1331.

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Indiana Grocery, Inc. v. Super Valu Stores, Inc.,* 864 F.2d 1409, 1412 (7th Cir.1989). When the moving party succeeds in showing the absence of a genuine issue as to any material fact, the opposing party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1335, 89 L.Ed.2d 538 (1986); *Bank Leumi Le-Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). The opposing party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish the existence of a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Also, if a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the opposing party is proper. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

I conclude that (1) plaintiff does not have the right under the Indian Gaming Regulatory Act to determine unilaterally where on its Indian lands it will conduct Class III gaming; (2) at this time plaintiff may not compel defendant to negotiate in good faith over gaming at the De Jope site; and (3) I need not reach the argument raised by defendant in his motion for summary judgment that a tribe may never sue under the IGRA to compel a state to negotiate in good faith over Class III gaming once a compact is concluded.

For the purpose only of deciding these motions, I conclude from the parties' proposed findings of fact that the following material facts are undisputed.

## UNDISPUTED FACTS

Plaintiff Wisconsin Winnebago Nation is an Indian tribe with a governing body duly recognized by the Secretary of the Interior and organized under Section 16 of the Indian Reorganization Act of 1934, 25 U.S.C. § 476. Defendant Tommy G. Thompson is the Governor of the State of Wisconsin. Under Wisconsin law, defendant Thompson is responsible for negotiations with plaintiff pursuant to the Indian Gaming Regulatory Act.

Plaintiff is the beneficial owner of a parcel of land located within the Town of Blooming Grove in Dane County, Wisconsin known as the "De Jope site." This parcel of trust land was declared by the Secretary of the Interior to be part of the Wisconsin Winnebago Reservation. Plaintiff owns at least 21 parcels of trust land in the state of Wisconsin.[1]

In the spring of 1992, plaintiff requested that defendant enter into negotiations with it for a compact for Class III gaming on plaintiff's Indian lands. In June 1992, defendant and plaintiff entered into a compact for the operation of Class III gaming at plaintiff's existing gaming facilities in Sauk, Jackson and Wood Counties. In the course of negotiating the June 1992 compact, plaintiff proposed that it be allowed to locate gaming facilities anywhere on its lands that constituted "Indian lands" within the meaning of the

Indian Gaming Regulatory Act and especially on the De Jope site. Throughout the negotiations, defendant refused to agree to the location of a Class III gaming facility at the De Jope site. As approved, the compact contains no provision for Class III gaming at the De Jope site.

Since June 1992, plaintiff has attempted several times to reopen discussions with defendant regarding Class III gaming at the De Jope Site. Defendant has refused to engage in discussions with plaintiff regarding Class III gaming at the De Jope site since the June 1992 compact was concluded.

### Plaintiff's Motion for Summary Judgment

Plaintiff presents two alternate theories in support of its motion for summary judgment: (1) The Indian Gaming Regulatory Act grants an Indian tribe the unilateral right to say where on its Indian lands it will operate Class III gaming, making the location of a gaming facility outside the scope of negotiation with the state; and (2) by refusing presently to discuss the possibility of Class III gaming at the De Jope site, defendant is failing to negotiate in good faith in violation of the gaming act.

### Site Selection

■ Plaintiff contends that as a matter of law, the Indian Gaming Regulatory Act permits Indian tribes to determine unilaterally where and on which of its Indian lands acquired prior to 1988 it wishes to operate gaming. (Defendant does not dispute that the De Jope site constitutes "Indian lands" as defined in 25 U.S.C. § 2703(4)). According to plaintiff, in adopting the Act, Congress intended that Indian tribes would choose the locations on their Indian land on which they wished to conduct gaming and would then request that the state enter into compact negotiations over the terms and conditions of gaming at the site or sites. Defendant disagrees and maintains that location is a proper subject for tribal-state negotiations leading up to the conclusion of a tribal-state compact.

---

**1.** In his proposed findings of fact, defendant maintains that plaintiff owns 125 parcels of land in the state of Wisconsin. Plaintiff disputed this proposed fact and submitted evidence that it owns only 21 parcels of land. It is not necessary to decide which party is correct on this point.

The Indian Gaming Regulatory Act provides that Class III gaming is lawful on Indian lands only if it is (1) authorized by an ordinance or resolution adopted by the governing body of the Indian tribe having jurisdiction over the land; (2) approved by the Chairman of the National Indian Gaming Commission; (3) is located in a state that permits such gaming for any purpose by any person, organization or entity; and (4) is conducted pursuant to a tribal-state compact. 25 U.S.C. § 2710(d)(1).[2] The Act directs tribes to "request the State in which such [Indian] lands are located to enter into negotiations for the purpose of entering into a Tribal–State compact governing the conduct of gaming activities." Section 2710(d)(3)(A). "Upon receiving such a request, the State shall negotiate with the Indian tribe in good faith to enter into such a compact." *Id.*

The Act grants jurisdiction to federal district courts to "hear any cause of action initiated by an Indian tribe arising from the failure of a State to enter into negotiations with the Indian tribe for the purpose of entering into a Tribal–State compact under paragraph (3) or to conduct such negotiations in good faith." Section 2710(d)(7)(A)(i). After a tribe requests the state to enter into negotiations for a tribal-state compact, the tribe must wait 180 days before bringing a cause of action for failure to enter into negotiations or conduct negotiations in good faith. Section 2710(d)(7)(B)(i). The burden of proving negotiation in good faith rests with the state if the tribe first introduces evidence that a tribal-state compact has not been concluded and that the state did not respond to the request to negotiate or did not negotiate in good faith. In determining whether a state has negotiated in good faith, the court may take into account "the public interest, public safety, criminality, financial integrity, and adverse economic impact on existing gaming activities." Section 2710(d)(7)(B)(iii)(I). However, states may not cite protection of other state-licensed gaming enterprises from competition with Indian tribes as a valid governmental interest during negotiations. *See* S.Rep. No. 100–446 at 13, 1988 U.S.C.C.A.N. at 3083.

A tribal-state compact may include such terms as (1) the application of civil and criminal laws necessary for the licensing and regulation of gaming activity; (2) allocation of civil and criminal jurisdiction between the state and the tribe necessary for the enforcement of such laws and regulations; (3) assessment by the state of gaming activities necessary to defray costs of regulating such activity; (4) taxation by the tribe of gaming activity in amounts comparable to amounts assessed by the state for comparable activity; (5) remedies for breach of contract; (6) standards for the operation of such activity and maintenance of the gaming facility included licensing; and (6) any other subjects that are directly related to the operation of gaming activities. Section 2710(d)(3)(C). Once a compact is concluded, "class III gaming activity on the Indian lands of the Indian tribe shall be fully subject to the terms and conditions of the Tribal–State compact." Section 2710(d)(2)(C).

Plaintiff interprets § 2710(d)(3)(C) as being the complete list of topics appropriate for inclusion in a tribal-state compact and maintains that the omission in that section of any reference to site selection means that Congress intended that decisions regarding location of gaming facilities be reserved exclusively for the tribal government and not be a legitimate subject of negotiation with the state. In further support of this position, plaintiff cites 25 U.S.C. § 2719, which provides expressly that for lands acquired by Indian tribes after October 17, 1988 (the effective date of the gaming act), a governor in the state in which such lands are located may exercise veto power over the tribe's decision to locate gaming on those lands. Section 2719(b)(1)(A). Plaintiff contends that

---

**2.** The Act defines Class III gaming as "all forms of gaming that are not class I gaming or class II gaming" and are known generally to include pari-mutuel horse and dog racing, casino gaming and jai alai. *See* S.Rep. No. 100–446, 100th Cong. 2d Sess. 13, *reprinted in* 1988 U.S.C.C.A.N. 3071, 3083. For a more detailed analysis of the application of § 2710 in the state of Wisconsin see *Lac du Flambeau Band of Lake Superior Chippewa Indians v. State of Wisconsin*, 770 F.Supp. 480 (W.D.Wis.1991), *appeal dismissed*, 957 F.2d 515 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 91, 121 L.Ed.2d 53 (1992).

the express grant of veto power in the case of lands acquired after 1988 indicates congressional intent that there be no restrictions whatsoever on the tribal government's choice of gaming location for lands acquired before October 1988. Finally, plaintiff notes that the general rule is that laws affecting Indian tribes are to be interpreted in favor of the tribe and that this rule should apply to the Indian Gaming Regulatory Act. *See County of Yakima v. Confederated Tribes and Bands of the Yakima Indian Nation,* — U.S. —, 112 S.Ct. 683, 116 L.Ed.2d 687 (1992); *Oneida Tribe v. Wisconsin,* 951 F.2d 757, 763 (7th Cir.1991).

Defendant responds first to plaintiff's argument that location is not a proper subject for negotiation by contending that the "conduct of gaming activities" language in § 2710(d)(3)(A) is sufficiently broad to include location as a consideration in the negotiations envisioned by that section. Furthermore, defendant argues that the location of gaming activities is a subject "directly related to the operation of gaming activities," *see* § 2710(d)(3)(C)(vii), and is therefore appropriate for negotiation between the tribe and the state. Defendant looks also to the statutory language that directs the court to consider "adverse economic impacts on existing gaming activities" in determining whether a state has conducted its negotiations in good faith. *See* § 2710(d)(7)(B)(iii)(I). Defendant argues that it is impossible to consider adverse economic impacts on existing gaming activities without considering the markets of the proposed facility and the existing gaming operations, both of which are dependent on the location of the facility itself. For instance, a proposed facility in the Appleton, Wisconsin area would have a large economic impact on any existing facilities in that same area but would likely have little economic impact on a facility in the Madison, Wisconsin area. Finally, defendant notes that during the negotiations leading up to the June 1992 compact between the parties, plaintiff negotiated readily over the location of gaming facilities and during the negotiations attempted to reach an agreement by which gaming would be conducted at the De Jope site.

I conclude that even interpreting the Indian Gaming Regulatory Act broadly in favor of plaintiff, *see* S.Rep. No. 100–446 (trusting that courts will continue to interpret any statutory ambiguities in favor of tribal interests), there is no evidence in the statutory language or the Act's legislative history that Congress intended to foreclose location as a bona fide subject of negotiation between tribes and states. First, the Act denotes some, but not all considerations that should be addressed in concluding a tribal-state compact. The language of the Act itself contains the catch-all category in § 2710(d)(3)(C)(vii) that could easily include site selection as a consideration and the legislative history provides that "[t]he terms of each compact may vary extensively depending on the type of gaming, *the location,* the previous relationship of the tribe and the State.... The Committee recognizes that subparts of each of the broad areas [of § 2710(d)(3)(C) ] may be more inclusive." S.Rep. No. 100–446 at 14, 1988 U.S.C.C.A.N. at 3084 (emphasis added). This broad language belies plaintiff's argument that the lack of a specific reference to site selection in the gaming act precludes location as a subject open to negotiation between the parties.

Furthermore, plaintiff's argument concerning the state's express veto power over location for Indian lands acquired after October 1988 misses the point. Defendant is not arguing that he may exercise veto power over the location of gaming on Indian lands acquired prior to 1988. In fact, there is no provision giving him such power. However, the fact that he may not exercise veto power over lands acquired prior to 1988 does not mean that issues of location are wholly outside the negotiation process. Instead, it is far more likely that Congress intended tribes and states to treat potential locations for gaming operations as one of many issues that should be addressed during negotiations leading to the conclusion of a tribal-state compact.

Indeed, the parties appear to have conducted their negotiations leading up to the June 1992 compact in the manner just described. During negotiations, the parties discussed several locations as possible sites

for gaming operations. Although plaintiff expressed its interest in locating a gaming facility at the De Jope site, defendant preferred other locations. Ultimately, the parties concluded a compact in June 1992 that provided for Class III gaming on plaintiff's land in Sauk, Jackson and Wood counties, with the possibility of one additional facility in those three counties. The compact contains no provision for a Class III gaming operation at the De Jope site. Although plaintiff makes reference in its brief to the financial pressures it was under to conclude a compact at all costs in June 1992 and to defendant's refusal to consider gaming at the De Jope site, plaintiff did not refer to these hardships in its proposed findings of fact. Plaintiff is unable to point to any evidence that the lack of a provision for Class III gaming at the De Jope site in the existing compact was anything more that a legitimate concession made by plaintiff during the negotiation process rather than an attempt by defendant to exercise an illegal veto over Indian lands acquired prior to 1988.

*Good Faith Negotiations*

■ Plaintiff's second theory in support of its motion for summary judgment is that defendant has failed to negotiate in good faith under the Indian Gaming Regulatory Act by refusing to discuss Class III gaming at the De Jope site since the conclusion of the June 1992 compact. Defendant responds that the parties negotiated over the De Jope site during negotiations leading up to the conclusion of the June 1992 compact and that in the absence of any provision in the existing compact compelling renewed negotiations at a later time, defendant has no obligation under federal law or the existing compact to discuss Class III gaming at the De Jope site with plaintiff. Defendant argues also that once a compact is in place, a tribe has no cause of action against the state under the Act.

I conclude that plaintiff may not rely on the Act to compel defendant to negotiate at this time over Class III gaming at the De Jope site. The issue was the subject of negotiation in 1992. Plaintiff was strongly in favor of establishing a gaming operation at the site and defendant was strongly against

it. The parties concluded a compact in June 1992 that provided for Class III gaming operations at three sites and did not allow for gaming at the De Jope site. Nothing in either the Act or the existing compact requires defendant to reopen negotiations over that issue.

Although plaintiff argues a host of reasons why the De Jope site was not included in the June 1992 compact, it failed to included any of these reasons in its proposed findings of fact. Also absent from the proposed findings of fact is any support for plaintiff's assertion that because the June 1992 compact does not address the De Jope site, the parties did not intend the existing compact to be the parties' final agreement, giving plaintiff the right to sue at this time to force negotiations over a second compact addressing gaming at De Jope. It is unnecessary to decide whether a tribe would ever have a cause of action under the Indian Gaming Regulatory Act after a compact has been negotiated. Plaintiff has shown no compelling reason why it did not sue under § 2710 prior to the conclusion of the compact negotiations, if it believed defendant was not negotiating in good faith. At this point, plaintiff must settle for the compact to which it agreed. The intent of the Indian Gaming Regulatory Act was to provide a framework by which Indian tribes and states would work together to provide a mutually agreeable plan for Indian gaming. As stated in the Senate Report,

> [t]his legislation is intended to provide a means by which tribal and State governments can realize their unique and individual governmental objectives while at the same time, work together to develop a regulatory and jurisdictional pattern that will foster a consistency and uniformity in the manner in which laws regulating the conduct of gaming activities are applied.

S.Rep. No. 100–446 at 6, 1988 U.S.C.C.A.N. at 3076. This congressional purpose is undermined if either a tribe or a state can go back on the terms agreed to in the compact in the absence of compelling reasons.

Furthermore, the Act provides that once a compact is concluded, "class III gaming activity on the Indian lands of the Indian tribe shall be fully subject to the terms and condi-

tions of the Tribal–State compact entered into under paragraph (3) by the Indian Tribe that is in effect." Section 2710(d)(2)(C). The June 1992 compact does not provide for Class III gaming on the De Jope site. Moreover, the compact does not provide for future negotiations over Class III gaming at De Jope or indicate in any way that the compact is less than the final agreement between the parties.[3] The only compact provision addressing future agreements reads, "[t]his compact shall not be modified, amended or otherwise altered without the prior written agreement of both the State and the Tribe." This language does not support plaintiff's view that it anticipated in June 1992 that defendant would be required to negotiate over the De Jope site in the future. If plaintiff intended to reserve negotiations over gaming at the De Jope site for another day, it should have insisted on an express provision to that effect in the June 1992 compact or included some language to convey its intention that the June 1992 compact governed gaming on plaintiff's lands in Sauk, Jackson and Wood counties only and was not the final word on Class III gaming on plaintiff's lands.

In sum, plaintiff has no cause of action at this time under the Indian Gaming Regulatory Act or under the June 1992 compact to compel defendant to negotiate over gaming at the De Jope site. As I have noted, I am not prepared to hold that there are no circumstances under which a tribe can sue a state to compel good faith negotiations over Class III gaming once a compact is concluded. However, I conclude that in this case the facts do not indicate that the June 1992 compact is anything less that a final agreement between the parties. I see no reason to disturb the terms of that agreement. Plaintiff's motion for summary judgment will be denied and summary judgment will be granted for defendant.

*Defendant's Motion for Summary Judgment*

Because I am denying plaintiff's motion for summary judgment above, I need not reach

defendant's argument that a tribe may never sue a state under · § 2710(d)(7)(A) once a tribal-state compact is concluded. Additionally, I need not reach his argument that plaintiff's action to compel good-faith negotiations is premature because plaintiff failed to wait the requisite 180–day period under § 2710(d)(7)(B)(i) before filing this action.

ORDER

IT IS ORDERED that plaintiff's motion for summary judgment is DENIED. Summary judgment is granted to the defendant on the ground that the June 1992 compact is a final agreement between the parties, not subject to reopening over the subject of Class III gaming at the De Jope site. The Clerk of Court is directed to enter judgment for defendant and to close this case.

---

**3.** I note that neither party submitted any provisions of the June 1992 compact in their proposed findings of fact. However, because both parties refer to the terms of the compact in their briefs, I have taken judicial notice of the existence and terms of the compact which is a matter of public record.